Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| BANK OF AMERICA, N.A.<br><br>Parte apelante<br><br>v.<br><br>**GLADYS IVETTE FALCÓN ORTIZ Y OTROS**<br><br>Parte apelada | **TA2026AP00294** | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala Superior de **Bayamón**<br><br>Caso Número:<br>**BY2025CV02855**<br><br>Sobre:<br>**COBRO DE DINERO – ORDINARIO Y OTROS** |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de abril de 2026.

Comparece ante nos Bank of America, N.A.[1], en adelante la parte apelante o Bank of America, y nos solicita que revisemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en adelante TPI-Bayamón, el 30 de diciembre de 2025, mediante la cual desestimó sin perjuicio la *Demanda* contra Gladys Falcón Ortiz, en adelante Falcón Ortiz o parte apelada, y la Administración de Pequeños Negocios (Small Business Administration) de los Estados Unidos, en adelante, parte apelada.

Por los fundamentos que expondremos a continuación, *revocamos* dictamen apelado.

**I.**

El 3 de junio de 2025, Bank of America presentó una demanda sobre cobro de dinero y ejecución de hipoteca contra Falcón Ortiz y

---

[1] BANK OF AMERICA, N.A. es una entidad bancaria debidamente autorizada a hacer negocios en el Estado Libre Asociado de Puerto Rico y cuyas oficinas corporativas se encuentran en 100 North Tryon Street, Charlotte, NC 28255. NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING es el agente de servicio de Bank of America, N.A. y tiene sus oficinas en 75 Beattie Place, Suite 300, Greenville, SC 29601.

la Administración de Pequeños Negocios de los Estados Unidos, esta última como acreedor posterior.[2] Según se alegó en la demanda, el 12 de diciembre de 2000, Falcón Ortiz suscribió un pagaré por la suma principal de ochenta mil trecientos treinta y siete dólares ($80,337), con intereses, garantizado mediante hipoteca constituida sobre inmueble ubicado en Bayamón, Puerto Rico.[3] Sostuvo, además, ser el tenedor del pagaré y, por tanto, la parte con derecho a exigir su cumplimiento.

Alegó, además, que Falcón Ortiz incumplió con las obligaciones pactadas al dejar de efectuar los pagos desde el 1 de marzo de 2024, por lo que declaró vencida la totalidad de la deuda. Afirmó que se adeuda la suma de cuarenta y ocho mil seiscientos cuarenta y tres dólares con seis centavos ($48,643.06) de principal, más intereses, cargos y demás partidas pactadas, y que la deuda es líquida, vencida y exigible. En consecuencia, solicitó la ejecución de la hipoteca mediante la venta judicial del inmueble.[4]

El 11 de junio de 2025, la parte apelante presentó una *Moción de Referido a Mediación,* mediante la cual solicitó que el caso fuera referido al proceso de mediación compulsoria conforme a la intitulada *Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal,* Ley Núm. 184-2012, según enmendada. Bank of America indicó que la parte apelada residía en la propiedad objeto de ejecución de hipoteca, por lo que procedía la aplicación del referido mecanismo.[5]

El 26 de junio de 2025, el TPI-Bayamón emitió una *Orden de Referido al Centro de Mediación,* mediante la cual refirió el caso al proceso de mediación compulsoria, al determinar que la propiedad

---

[2] Entrada 1 de SUMAC, apéndice 1.
[3] Entrada 1 de SUMAC TA, apéndice 1, anejo 1.
[4] Entrada 1 de SUMAC TA, apéndice 1.
[5] *Íd.,* apéndice 8.

objeto de ejecución constituía la residencia principal de Falcón Ortiz. A tales efectos, señaló la celebración de la *vista de mediación* para el 6 de agosto de 2025 y ordenó la comparecencia de las partes.[6]

Posteriormente, el 18 de julio de 2025, Bank of America presentó una *Moción para la Paralización de los Procedimientos,* en la cual informó que la parte apelada había sometido una solicitud al programa de mitigación de pérdidas ("Loss Mitigation") y solicitó la paralización del caso por un término de noventa (90) días para completar dicho proceso.[7]

En esa misma fecha, el TPI-Bayamón tomó conocimiento de la referida moción y dispuso que la misma sería atendida una vez culminara el proceso de mediación previamente ordenado.[8]

El 14 de agosto de 2025, el Centro de Mediación de Conflictos presentó una *Moción Informativa sobre Resultado del Proceso de Mediación,* en el cual informó que el caso había sido referido a mediación mediante *Orden* del 26 de junio de 2025 y que *las partes habían completado dicho proceso con acuerdos,* por lo que anejó el documento correspondiente de aceptación de acuerdos.[9]

Surge de la documentación anejada que, como resultado del proceso de mediación, las partes alcanzaron un acuerdo de modificación de hipoteca, mediante el cual la apelada cualificó para una modificación del préstamo a un término de cuatrocientos ochenta (480) meses, con una tasa de interés de siete punto veinticinco por ciento (7.25%) y un pago mensual de cuatrocientos ochenta y un dólares con cinco centavos ($481.05). Asimismo, se acordó un "*partial claim*" por la suma de catorce mil quinientos noventa y dos dólares con noventa y un centavos ($14,592.91),

---

[6] Entrada 1 de SUMAC TA, apéndice 16.
[7] *Íd.,* apéndice 19.
[8] *Íd.,* apéndice 20.
[9] *Íd.,* apéndice 21.

pagadero al vencimiento del préstamo.[10] Del acuerdo surge, además, que la apelante se comprometió a que, una vez formalizada la modificación, su representación legal notificaría al Tribunal el desistimiento de la acción de ejecución de hipoteca.[11]

Posteriormente, el 15 de agosto de 2025, el TPI-Bayamón emitió una *Orden*, notificada el 19 de agosto de 2025, mediante la cual tomó conocimiento de la *Moción sobre Resultado del Proceso de Mediación* y ordenó a Bank of America a presentar la estipulación correspondiente en un término de diez (10) días.[12]

Luego, el 30 de agosto de 2025, el Foro Primario emitió una segunda *Orden* en la que requirió a la parte apelante mostrar causa, dentro de un término de diez (10) días, por la cual no debían imponérsele sanciones, ante su incumplimiento con la *Orden* previamente emitida el 15 de agosto de 2025.[13]

El 3 de septiembre de 2025, la Bank of America presentó una *Moción Informativa y en Cumplimiento de Orden*, mediante la cual informó que las partes completaron el proceso de mediación con acuerdos y que la parte apelada fue aprobada para una modificación del préstamo hipotecario. No obstante, indicó que se encontraba en espera de confirmar la formalización de dicha modificación para así presentar la correspondiente solicitud de desistimiento, por lo que solicitó un término adicional de treinta (30) días para informar al Tribunal.[14]

Posteriormente, el 7 de octubre de 2025, el TPI-Bayamón emitió una *Orden* mediante la cual nuevamente requirió a Bank of America mostrar causa, en un término de cinco (5) días, por la cual no debían imponérsele sanciones por el incumplimiento de la *Orden*

---

[10] Entrada 1 de SUMAC TA, apéndice 21, anejo 1.
[11] *Íd.*, apéndice 21, anejo 1. En el caso BY2025CV02855.
[12] *Íd.*, apéndice 22.
[13] *Íd.,* apéndice 23.
[14] *Íd.*, apéndice 24.

emitida el 15 de agosto de 2025, cuyo término había sido previamente extendido.[15]

A esos efectos, el 14 de octubre de 2025, Bank of America presentó una *Moción en Cumplimiento de Orden o Resolución*, en respuesta al requerimiento del Tribunal, mediante la cual informó que el caso continuaba activo en el proceso de mitigación de pérdidas y que se encontraba en espera de confirmar la formalización de la modificación del préstamo, a los fines de notificar al Tribunal y presentar la correspondiente solicitud de desistimiento. A tales efectos, solicitó un término adicional de treinta (30) días para informar.[16]

El 15 de octubre de 2025, el Foro de Primera Instancia emitió una *Orden* mediante la cual declaró *No Ha Lugar* la solicitud de término adicional presentada por la parte apelante. En dicha determinación, el Foro Primario señaló que la *Aceptación de Acuerdos* fue suscrita el 14 de agosto de 2025 y que, conforme a sus términos, el primer pago ya debía haberse efectuado, por lo que concluyó que habían transcurrido más de sesenta (60) días sin que se justificara la dilación en la formalización de la modificación del préstamo. En consecuencia, concedió a Bank of America un término final de diez (10) días para cumplir, bajo apercibimiento de sanciones y/o archivo del caso.[17]

Posteriormente, el 27 de octubre de 2025, la parte apelante presentó una *Moción Informativa y en Cumplimiento de Orden*, mediante la cual informó que, en cumplimiento con la orden emitida el 15 de octubre de 2025, aún no se había finalizado el proceso de modificación del préstamo. Indicó que, conforme a nuevas directrices del *Federal Housing Administration* (FHA), la parte

---

[15]. Entrada 1 de SUMAC TA, apéndice 26.
[16] *Íd.,* apéndice 27.
[17] *Íd.,* apéndice 28.

apelada debía suscribir y devolver documentación adicional necesaria para completar la modificación, la cual ya había sido remitida a dichos fines. Asimismo, solicitó al Tribunal que tomara conocimiento de las gestiones en curso y concediera un término adicional para informar el resultado final del proceso.[18]

El 28 de octubre de 2025, el TPI-Bayamón emitió una *Orden* mediante la cual concedió a Bank of America un término adicional de quince (15) días para presentar la estipulación correspondiente, y advirtió que, de no cumplir dentro de dicho término, se le impondrían sanciones.[19]

El 12 de noviembre de 2025, Bank of America presentó una *Moción Informativa y en Cumplimiento de Orden*, mediante la cual informó que, en cumplimiento con la *Orden* emitida el 28 de octubre de 2025, el proceso de modificación del préstamo se encontraba en su etapa final, toda vez que la parte apelada había suscrito y remitido la documentación requerida conforme a las directrices aplicables. Indicó, además, que se encontraba en espera de la confirmación final para así informar al Tribunal y presentar la correspondiente solicitud de desistimiento, por lo que solicitó un término adicional para informar.[20]

El 13 de noviembre de 2025 el TPI-Bayamón emitió una *Orden* mediante la cual concedió a Bank of America un término adicional de diez (10) días para presentar el desistimiento correspondiente.[21] Ante el incumplimiento de la parte apelante, el 26 de noviembre de 2025, el Foro Primario, impuso una sanción de cincuenta dólares ($50.00) por incumplir con las órdenes del tribunal, y concedió un término de quince (15) días para sufragar las sanciones y cumplir con la orden, so pena de archivo de la demanda.[22]

---

[18] Entrada 1 de SUMAC TA, apéndice 29.
[19] *Íd.,* apéndice 30.
[20] *Íd.,* apéndice 31.
[21] *Íd.,* apéndice 32.
[22] *Íd.,* apéndice 33.

Posteriormente, el 11 de diciembre de 2025, Bank of America presentó una *Moción Informativa y en Cumplimiento de Orden*, mediante la cual informó que, en cumplimiento con una orden previa, la parte demandada fue aprobada para un período de prueba de pagos por tres (3) meses consecutivos, comenzando *el 1 de enero de 2026 y culminando el 1 de marzo de 2026*. Indicó que, de cumplirse satisfactoriamente dicho período, se procedería a completar la modificación permanente del préstamo, la cual estimó podría finalizar para *abril de 2026.* Asimismo, expresó que, conforme a las regulaciones y directrices de la FHA, los procedimientos judiciales permanecen en suspenso durante el proceso de evaluación, y que, de obtenerse la aprobación final, se procedería al desistimiento de la acción. A tales efectos, solicitó un término adicional de cuatro (4) meses para informar el resultado final del proceso o solicitar el remedio correspondiente.[23]

En respuesta a dicha solicitud, el 12 de diciembre de 2025, el TPI-Bayamón emitió una orden mediante la cual declaró *No Ha Lugar* a la solicitud de término adicional presentada por la parte apelante. El Foro Primario reconoció que la parte demandada fue aprobada para un período de pago a prueba y que el proceso de modificación podría culminar para abril de 2026. No obstante, concluyó que Bank of America pretendía mantener el caso activo por varios meses adicionales. En consecuencia, le concedió a la parte apelante hasta el 29 de diciembre de 2025 para presentar el desistimiento correspondiente, bajo apercibimiento de archivo del caso.[24]

En desacuerdo con dicha determinación, el 29 de diciembre de 2025, Bank of America presentó una *Moción de Reconsideración*, mediante la cual solicitó que el Tribunal dejara sin efecto su orden

---

[23] Entrada 1 de SUMAC TA, apéndice 35.
[24] *Íd.,* apéndice 36.

del 11 de diciembre de 2025 y paralizara los procedimientos hasta tanto culminara el período de pago a prueba de la parte apelada.[25]

Mediante *Resolución Interlocutoria* notificada el 30 de diciembre de 2025, dicha *Moción de Reconsideración* fue declarada *No Ha Lugar* por el TPI-Bayamón.[26]

En esa misma fecha, el Foro de Primera Instancia emitió una *Sentencia Final* en la cual determinó que Bank of America incurrió en incumplimiento reiterado con las órdenes del tribunal, al no presentar la estipulación o el desistimiento correspondiente dentro de los términos concedidos. El TPI-Bayamón reconoció que las partes habían alcanzado acuerdos en el proceso de mediación y que la parte apelada fue aprobada para un período de pago a prueba como parte del proceso de modificación del préstamo. No obstante, concluyó que las explicaciones ofrecidas por la parte apelante no justificaban la dilación ni el incumplimiento procesal, particularmente ante la falta de presentación del desistimiento ordenado. En consecuencia, al amparo de la Regla 39.2(a) de Procedimiento Civil, se desestimó la demanda sin perjuicio y ordenó el archivo del caso.[27]

El 14 de enero de 2026, Bank of America presentó una *Moción en Reconsideración,* en la cual solicitó que se dejara sin efecto la *Sentencia* del 30 de diciembre de 2025. Alegó que el incumplimiento estuvo justificado debido a que el proceso de modificación del préstamo se encontraba en curso, sujeto a la reglamentación federal, e indicó que la parte apelada participaba de un periodo de pago a prueba. Por ello, solicitó la paralización de los procedimientos y un término adicional para informar o presentar el desistimiento.[28]

---

[25] Entrada 1 de SUMAC TA, apéndice 39.
[26] *Íd.,* apéndice 40.
[27] Entrada 41 de SUMAC TPI.
[28] Entrada 42 de SUMAC TPI.

El 16 de enero de 2026, el TPI-Bayamón declaró *No Ha Lugar* la *Moción de Reconsideración[29],* y el 19 de febrero de 2026 dictó *Orden* para que se notificara la *Sentencia* del 30 de diciembre de 2025.[30]

Inconforme con la determinación del TPI-Bayamón, el 23 de marzo de 2026 Bank of America compareció ante esta Curia mediante recurso de *Apelación,* y formuló el siguiente señalamiento de error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR EL PLEITO DE EPIGRAFE.**

El 25 de marzo de 2026, emitimos una *Resolución* mediante la cual concedimos a la parte apelada hasta el 13 de abril de 2026 para presentar su posición, según dispone la Regla 37 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 56-57, 215 DPR ___ (2025).[31]

Transcurrido dicho término sin que la parte apelada compareciera, el recurso quedó perfeccionado, por lo que procedemos a resolver.

**II.**

**A. Apelación Civil**

Las Reglas de Procedimiento Civil de Puerto Rico se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento de prueba, vista evidenciaria, sentencia, reconsideración, *apelación,* y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea,* 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en

---

[29] Entrada 43 de SUMAC TPI.
[30] Entrada 45 de SUMAC TPI.
[31] Entrada 3 de SUMAC TA.

nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA, Ap. VIII, R. 52; *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase, además, R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de certiorari. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, se reconoce que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Regla 13(A) del Reglamento del Tribunal de Apelaciones, supra, pág. 22; Art. 4.006(a) Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24y.

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio*

*Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).

### B. Desestimación como sanción

La Regla 39.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2, le concede a un tribunal, *a iniciativa propia* o a solicitud de parte, la potestad de decretar la desestimación de la causa de acción o las alegaciones de un parte, si esta deja de cumplir con las reglas procesales o con cualquier orden del tribunal. No obstante, esta discreción judicial está condicionada por una serie de salvaguardas reconocidas a la parte litigante. Sobre este particular la Regla 39.2 (a) dispone lo siguiente:

> Si el demandante deja de cumplir con estas reglas o con **cualquier orden del tribunal**, el tribunal a iniciativa propia o a solicitud del demandado podrá decretar la desestimación del pleito o de cualquier reclamación contra él, o la eliminación de las alegaciones, según corresponda.
> Cuando se trate de un primer incumplimiento, **la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder**. Si el abogado o abogada de la parte no responde a tal apercibimiento, **el tribunal procederá a imponer sanciones al abogado o la abogada de la parte y se notificará directamente a la parte** sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que ésta no sea corregida**, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones.** El tribunal concederá a la parte un término de tiempo razonable para corregir la situación, que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.

> (Énfasis suplido.)

La aprobación de la Ley 493-2004, acogió la norma establecida por la jurisprudencia. *Mun. de Arecibo v. Almac. Yakima,* 154 DPR 217, 221-222 (2001); *Maldonado v. Srio. de Rec. Naturales,*

113 DPR 494, 498 (1982). La precitada ley enmendó la Regla 39.2(a) de las Reglas de Procedimiento Civil de 1979, y posteriormente fue adoptada en las Reglas de Procedimiento Civil de 2009. La Exposición de Motivos de la enmienda promovida por la Ley 493-2004 indica lo siguiente:

> Es inaceptable que nuestros tribunales de justicia desestimen casos por situaciones fuera del control de las partes, sin que se les permita actuar sobre las violaciones que se le han señalado. Por ejemplo, en ocasiones, los tribunales archivan pleitos porque el a[b]ogado de la parte no ha cumplido con alguna disposición legal o con alguna orden del tribunal. En ocasiones, se ha impuesto tan severa sanción porque no se ha recibido una notificación de alguna de las partes o del tribunal. **En tales casos, no debe proceder la desestimación, pues constituye una sanción demasiado severa contra la parte, considerando que la falta la cometió su abogado y no la parte y/o que la causa de la desestimación no está bajo el control de la parte ni del propio abogado**.
> El ordenamiento jurídico debe atemperarse a las expresiones del Tribunal Supremo de Puerto Rico sobre la materia objeto de este proyecto. Se trata de un asunto de justicia sustancial que no ha sido atendido adecuadamente por nuestro ordenamiento jurídico [...].
>
> (Énfasis suplido). Exposición de Motivos, Ley para enmendar la Regla 39.2 de las Reglas de Procedimiento Civil de 1979, Ley 493-2004.

Como se aprecia en la precitada enmienda, en aras de garantizar el debido proceso de ley, el tribunal está obligado a seguir un procedimiento **establecido antes de ordenar la desestimación de la demanda** o la eliminación de las alegaciones. Es decir, la parte tiene que ser notificada por el tribunal de la situación de incumplimiento, junto a sus consecuencias y, además, se le tiene que brindar la oportunidad de tomar las medidas necesarias para corregirla. De lo contrario, se violaría el debido proceso de ley, asunto que encuentra apoyo en las expresiones de nuestro Tribunal Supremo:

> Desestimar de inmediato una demanda, o una contestación, como medio de aplicar sanción al proceder o a una actitud del abogado en el curso del pleito, tiene el efecto de privar a un ciudadano de la función judicial de adjudicación que forma parte de nuestra estructura constitucional, privándole de la oportunidad de un día en corte para hacer valer en los méritos la legitimidad de su derecho a reclamar si es demandante, o la legitimidad y mérito de una defensa, si es demandado. **Este es un valor en el orden social demasiado apreciable para ser prontamente sacrificado, aun cuando**

**la sanción se dé en aras del pronto despacho de los asuntos radicados y de una rápida administración de justicia.** Si los pleitos judiciales se desestimaren por esta vía indistintamente, se habrán despachado los asuntos, no hay duda, pero tal vez no habría quedado mucho de justicia a impartir.

(Énfasis nuestro). *Ramírez de Arellano v. Srio. De Hacienda*, 85 DPR 823, 829 (1962), reiterado en *Díaz v. Tribunal Superior*, 93 DPR 79, 85 (1966) y *S.L.G. Sierra v. Rodríguez*, 163 DPR 738, 746 (2005). Véase, además, *Garriga Gordils v. Maldonado Colón*, 109 DPR 817, 822 (1980); *Acevedo v. Compañía Telefónica de P.R.*, 102 DPR 787, 791 (1974).

Es por esto que, la determinación de desestimar una demanda debe tomarse con juicio y cautela. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 298 (2012); *Maldonado v. Srio. de Rec. Naturales*, supra. Además, debe también considerarse que:

[L]a desestimación de un caso como sanción, debe prevalecer **únicamente** en situaciones extremas en las cuales haya quedado demostrado de manera clara e inequívoca la desatención y el abandono total de la parte con interés **y después que otras sanciones hayan probado ser ineficaces en el orden de administrar justicia y, en todo caso, no debería procederse a ella sin un previo apercibimiento**.

(Énfasis nuestro). *Mun. de Arecibo v. Almac. Yakima*, supra, pág. 222.

Por lo tanto, "en ausencia de contumacia o dejadez extrema, la negativa de un tribunal a emplear sanciones menos drásticas que la desestimación, **constituye una privación al derecho constitucional a ser oído que es corolario del debido proceso de ley**". J. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 2012, pág. 252 citando a *Societe Internationale v. Rogers*, 357 US 197 (1958). (Énfasis nuestro.)

El concienzudo uso del mecanismo procesal de la desestimación tiene el potencial de adelantar los fines justicieros que persiguen los tribunales. Sin embargo, el desmesurado uso de estos puede convertirse en una cortapisa para la justicia. *Sánchez Rodríguez v. Adm. de Corrección*, 177 DPR 714, 721 (2009).

### III.

En este caso, Bank of America sostiene que el Foro de Primera Instancia erró al desestimar su *Demanda* de cobro de dinero y

ejecución de hipoteca, al amparo de la Regla 39.2 de Procedimiento Civil, *supra,* pese a que el proceso de mitigación de pérdidas y modificación el préstamo hipotecario continuaba en curso. Además, sostuvo que sus comparecencias previas demostraban que no hubo abandono ni desinterés en la tramitación del caso. *Le asiste la razón.*

Surge del expediente del caso, que el Foro Primario ejerció su facultad para imponer sanciones ante el incumplimiento de sus órdenes. Sin embargo, la utilización de la desestimación como sanción no puede darse de forma automática ni como primera alternativa, sino que exige el cumplimiento estricto de las salvaguardas procesales que protegen el debido proceso de ley. A la luz de los hechos de este caso, dichas salvaguardas no se observaron cabalmente.

En primer lugar, aunque el TPI-Bayamón apercibió a Bank of America y le concedió varios términos para cumplir, los plazos otorgados —particularmente el término final para presentar el desistimiento— no resultaron razonables a tenor con la naturaleza del trámite procesal. Según se desprende del expediente, al momento de emitirse las órdenes, las partes habían alcanzado acuerdos en mediación y el préstamo se encontraba en proceso activo de modificación, sujeto a requisitos y evaluaciones adicionales. Bajo estas circunstancias, el incumplimiento de la parte apelante no respondía a una conducta contumaz ni a un abandono del caso, sino a un proceso en desarrollo *que dependía de factores externos al control inmediato de Bank of America.*

En segundo lugar, el Foro de Primera Instancia contaba con alternativas menos severas para atender la situación procesal. De hecho, ya había recurrido a la imposición de sanciones, lo que evidenciaba que el proceso disciplinario se encontraba en curso. No obstante, sin que se demostrara la ineficacia de dichas medidas ni una dejadez extrema por parte de Bank of America, el tribunal optó

por la sanción más drástica disponible. Tal proceder no se ajusta al carácter excepcional que reviste la desestimación como remedio.

Además, no surge del expediente una conducta que evidencie desinterés total en tal causa. Por el contrario, la parte demandante compareció en múltiples ocasiones mediante mociones informativas y en cumplimiento de orden, en las que explicó el estado del proceso de mitigación de pérdidas y su intención de desistir una vez se completara la modificación del préstamo.

Al desestimar el caso de autos, el TPI-Bayamón privó a Bank of America de la adjudicación de su causa en los méritos, a pesar de que el caso se encontraba encaminado a una solución sustantiva. Dado que el incumplimiento de la parte apelante no evidenció abandono ni contumacia, la desestimación resultó una sanción excesiva frente a las circunstancias particulares del caso.

En consecuencia, concluimos que el Foro Primario incidió en su discreción al desestimar la *Demanda* de epígrafe, por lo que procede la *revocación* de la *Sentencia* apelada.

**IV.**

Por los fundamentos antes expuestos, *se revoca la Sentencia apelada.* En consecuencia, ordenamos la reinstalación de la demanda incoada por el aquí apelante y la continuación de los procedimientos de manera cónsona con lo aquí dispuesto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones